**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Michael H. Wu and Christine T. Wu, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:15-cv-02238 |
| v. ) | |
| ) | Judge Milton I. Shadur |
| Prudential Financial Inc., et al., ) | |
| ) | Magistrate Judge Mary M. Rowland |
| ) | |
| Defendants. ) | |

**DEFENDANTS LSV ASSET MANAGEMENT, MARSICO CAPITAL
MANAGEMENT, LLC AND WILLIAM BLAIR & CO., LLC'S
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR
<u>ASSESSMENT OF COSTS UNDER RULE 41(D)</u>**

Defendants LSV Asset Management, Marsico Capital Management, LLC, and William Blair & Co., LLC ("the Sub-Adviser Defendants") submit this Memorandum in support of their Motion to Dismiss Plaintiffs' Amended Complaint under Rules 8(a), 9(b), and 12(b)(6), and for Assessment of Costs under Rule 41(d).

**INTRODUCTION**

Five months ago, this Court dismissed Plaintiffs' first pro se lawsuit against the Sub-Adviser Defendants (14-cv-5392) (the "First Lawsuit") with prejudice, finding that it failed to state a plausible claim under Rule 8(a). (Dkt. 90, Ex. A.) At a subsequent hearing on Plaintiffs' motion to amend judgment under Rule 59(e), Plaintiffs represented to the Court that they had identified counsel who would represent them in filing a FINRA arbitration claim, but only if the Court's dismissal was amended to one without prejudice. (Jan. 20, 2015 Tr., Ex. B, at 11.) Over the Sub-Adviser Defendants' objection, the Court granted Plaintiffs' request and entered an order that the prior dismissal of Plaintiffs' amended complaint was without prejudice. (Dkt. 100, Ex.

C.) In so doing, the Court recognized that the "[defendants] have expended a lot of time" and that defendants "may have some other remedy by reason of having been led down the garden path on this one," but expressed concern for Plaintiffs' pro se status and their ability to try to pursue a claim elsewhere. (Jan. 20, 2015 Tr., Ex. B, at 14-15.)

Despite Plaintiffs' representations to the Court, no FINRA claim was ever filed. Instead, like a bad penny, Plaintiffs are back with another pro se complaint against most of the same defendants from the First Lawsuit. The amended complaint in the present case – with respect to the claims asserted against the Sub-Adviser Defendants – is very similar to the amended complaint in the First Lawsuit, which was dismissed by this Court. It contains the same incomprehensible claims under federal securities statutes that either do not give rise to a private cause of action or are clearly time-barred. As set forth below, the Court should enter dismissal of the new complaint with prejudice and allow the Sub-Adviser Defendants to submit an application for costs under Rule 41(d).

## ARGUMENT

### I. AFTER THREE TRIES AND TWO DISMISSALS IN THE FIRST LAWSUIT, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF[1]

Plaintiffs' amended complaint alleges nine counts against all Defendants, none of which states a claim for relief. In particular, and as described in greater detail below and in Prudential's Memorandum of Law (Dkt. 22), which is incorporated by reference, the Court should dismiss all nine of these counts for the same reasons it dismissed the amended complaint in Plaintiffs' First Lawsuit:

---

[1] The Sub-Adviser Defendants do not admit the allegations in the amended complaint, but "familiar Rule 12(b)(6) principles require a district court to accept all of a plaintiff's well-pleaded factual allegations as true, and to draw all reasonable inferences from those allegations in plaintiff's favor." *Warrick v. Roberts*, 34 F. Supp. 3d 913, 915 (N.D. Ill. 2014) (Shadur, J.). However, it is equally true that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

2

- All of Plaintiffs' claims fail under Fed. R. Civ. P. 8(a) as implausible and under Fed. R. Civ. P. 9(b) for failure to plead with particularity;

- Counts 5, 9, 12, 13, and 14 do not give rise to a private right of action;

- Counts 2, 6, and 7 are barred by the applicable statutes of limitation and repose;

- Plaintiffs fail to plead the elements of a Section 10(b) claim in Count 7; and

- Plaintiffs fail to allege facts sufficient to plead a violation of Section 12(d)(1) of the Investment Company Act in Count 10.

### A. Plaintiffs' Complaint as to the Sub-Adviser Defendants Continues to Fall Short of the Pleading Requirements of Rule 8(a), *Twombly*, and *Iqbal*

While pro se complaints are to be liberally construed, they still must comply with the Federal Rules of Civil Procedure. In particular, they must satisfy the requirement of Rule 8(a) that the plaintiff set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs' new complaint – like the amended complaint in the First Lawsuit – is incomprehensible and completely devoid of factual allegations against the Sub-Adviser Defendants.

The Sub-Adviser Defendants are investment advisory firms that sub-advise (or formerly sub-advised) certain Prudential funds in which other Prudential accounts could invest. The Sub-Adviser Defendants are not affiliated with Prudential or Citibank, and were at least three steps removed from Plaintiffs' dealings with Citibank and through it, Prudential. Plaintiffs do not allege that they ever dealt directly with the Sub-Adviser Defendants, or that the Sub-Adviser Defendants were even aware of Plaintiffs' purchase of a Prudential annuity until recently. Nor do Plaintiffs allege particularized facts or events linking the Sub-Adviser Defendants to the hazy misconduct alleged against Defendants generally.

3

The only details that Plaintiffs provide about the Sub-Adviser Defendants is found in three paragraphs of Plaintiffs' morass of allegations under the heading "Misconducts [sic] of Underlying Four Unaffiliated Portfolio Managers":

> 68. Prudential said in the PI Brochure filed with the SEC on 11/12/2012 that (a) "[t]he manager evaluation process is a rigorous approach that captures both qualitative and quantitative attributes using screening techniques, questionnaires and analytical assessments, interviews, on-site visits at PI's discretion, and on-going monitoring of portfolio performance and holdings[]" . . . and (b) "… the individual portfolio manager who is primarily responsible for the day-to-day management of a portfolio or fund moves from one firm to another firm ..."[2]
>
> \* \* \* \* \* \* \* \* \*
>
> 71. Marsico said in its email dated 5/2/2012 to Plaintiff(s) that "… We are not able to comment on Marsico Products offered by different entities such as Prudential."
>
> 72. LSV, Marsico … and WBC, who offer their respective product(s) in the portfolio(s) and also act as the IM of such portfolio(s), knew or should have known that they willingly aid, abet, induce, or procure the commission of a violation of 7 USC § 25 and COUNTs [sic] 2, 5-7, 9-10, and 12-14 because they are sub-advisers or contracted intermediaries to PI to administer certain compliance functions for those portfolio assets that are directly managed by them.

Am. Compl. ¶¶ 68, 71-72 (internal citations omitted). Taken at face value, and stripping away any legal or conclusory allegations, Plaintiffs merely assert that: (1) Prudential evaluates and monitors its portfolio managers; (2) there are instances in which Prudential may elect to follow an individual portfolio manager from one firm to another; (3) an affiliate of Marsico declined to comment on Marsico funds offered through Prudential; and (4) Prudential contracts with the Sub-Advisers to perform certain sub-advisory or compliance functions. *Id.* From these wholly unremarkable allegations, Plaintiffs conclude that the Sub-Adviser Defendants "knew or

---

[2] It is baffling what relevance this allegation has to Plaintiffs' claims, although what is clear is that the selective quotation of the 2012 Prudential Investments LLC SEC filing (Am. Compl. Ex. B-5) is materially misleading. The quoted provision relating to "the day-to-day management of a portfolio or fund" concerns an instance in which a unit of Prudential may recommend that it engage an individual portfolio manager who is responsible for the "day-to-day management of a portfolio or fund" when that manager moves from one firm to another, which Plaintiffs do not allege occurred here. *See id.*

4

should have known that they willingly aid, abet, induce, or procure the commission" of a slew of securities and securities fraud violations by the Prudential Defendants. *Id.* ¶ 72. Aside from these three paragraphs set forth above, Plaintiffs fail to make any specific allegations against any of the Sub-Adviser Defendants, or explain how they fit into Plaintiffs' very difficult to understand claims against the Prudential Defendants. *Id.* ¶¶ 77, 86, 89, 92, 98, 101, 107, 110, 113.

These sparse allegations fail to satisfy Rule 8(a), which demands that Plaintiffs allege enough facts to state a case that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) demands that the complaint make "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Prudential Defendants' Memorandum of Law § I (Dkt. 22).

As with the amended complaint in the First Lawsuit, Plaintiffs have failed to plead facts that put the Sub-Adviser Defendants on notice of what claims are being asserted against them, and thus the instant amended complaint should be dismissed with prejudice under Rule 8(a). *See Betts v. Container Corp. of Am.*, No. 94 C 242, 1994 WL 161919, at *1 (N.D. Ill. Apr. 22, 1994) (Shadur, J.) ("[O]ur Court of Appeals expressed itself in no uncertain terms that a district court, when faced with repetitive violations of the mandates for simplicity under Fed. R. Civ. P. ('Rule') 8(a)(2) and 8(e)(1), should give serious consideration to dismissing the action with prejudice.").[3]

For the foregoing reasons, Plaintiffs' amended complaint should be dismissed for failure to comply with the requirements of Rule 8(a).

---

[3] *See* Ex. D for a copy of each of the unreported opinions cited herein.

5

### B. The Amended Complaint Fails to Satisfy Rule 9(b) with Respect to the Sub-Adviser Defendants

The amended complaint likewise fails to comply with Rule 9(b), which requires Plaintiffs to plead "the circumstances constituting fraud or mistake" with "particularity." Fed. R. Civ. P. 9(b). Plaintiffs identify this as a "securities fraud lawsuit" and generally allege "fraudulent offers, sales, and managements" of annuities, fraudulent exercise of voting authority, and an "embezzlement scheme." Am. Compl. ¶¶ 1, 22, 110, 113. "[The] Complaint, sounding as it does in fraud, has to satisfy Rule 9(b)'s requirement that the circumstances constituting fraud . . . [ ] be stated with particularity." *HGN Corp. v. Chamberlain, Hrdlicka, White, Johnson & Williams*, No. 85 C 8081, 1985 WL 4885, at *1 (N.D. Ill. Dec. 18, 1985) (Shadur, J.) (internal quotations omitted).

Nowhere in the amended complaint do Plaintiffs provide the who, what, when, where, and how of any fraudulent conduct allegedly committed by the Sub-Adviser Defendants as required under Rule 9(b). "To satisfy Rule 9(b), however, [Plaintiff] must decide which precise acts it is labeling fraud. Neither this Court nor [Defendant] should have to guess which allegations are part of [Plaintiff's] overall fraud count." *Mutuelle Generale Francaise Vie v. Life Assur. Co. of PA*, 688 F. Supp. 386, 393 n.11 (N.D. Ill. 1988) (Shadur, J.). Plaintiffs simply lump the Sub-Adviser Defendants together with all other Defendants and generally allege fraud against this amorphous group. In doing so, Plaintiffs fail to satisfy the Rule 9(b) standard. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of plaintiffs' Securities Exchange Act claims where complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity, how the alleged fraud was perpetrated, or when the allegedly fraudulent statements were made" and instead "lump[ed] all the defendants together and d[id] not specify who was involved in what activity."). For the foregoing reasons as well as those set

forth in the Prudential Defendants' Memorandum of Law § I (Dkt. 22), Plaintiffs' amended complaint should be dismissed for failure to abide by the strictures of Rule 9(b).

## II. PLAINTIFFS CONTINUE TO IGNORE THE DEFECTS IN THEIR PRIOR COMPLAINTS

### A. FIVE CLAIMS ALLEGED AGAINST THE SUB-ADVISER DEFENDANTS HAVE NO PRIVATE RIGHT OF ACTION (COUNTS 5, 9, 12, 13, AND 14)

As with the prior complaints in the First Lawsuit, most of Plaintiffs' claims against the Sub-Adviser Defendants (Counts 5, 9, 12, 13, and 14) arise under statutes that do not provide a private right of action. Therefore, these claims should be dismissed with prejudice. The Sub-Adviser Defendants incorporate by reference the arguments and authority described in the Prudential Defendants' Memorandum of Law § III (Dkt. 22).

## III. FOUR CLAIMS ALLEGED AGAINST THE SUB-ADVISERS ARE TIME-BARRED (COUNTS 2, 3, 6, AND 7)

Four other claims against the Sub-Adviser Defendants (Counts 2, 3, 6, and 7) are barred by the applicable statutes of limitations and repose. Therefore, these claims must also be dismissed with prejudice. The Sub-Adviser Defendants incorporate by reference the arguments and authority described in the Prudential Defendants' Memorandum of Law § III (Dkt. 22).

## IV. PLAINTIFFS HAVE FAILED TO PLEAD THE ELEMENTS OF A SECTION 10(b) CLAIM (COUNT 7)

In addition to being untimely, Plaintiffs' claim under Section 10(b) of the Securities Exchange Act and Rule 10b-5 (Count 7) also fails to plead the required elements for such a claim, namely, scienter, reasonable reliance upon an alleged misrepresentation, and causation. The amended complaint alleges generally that all Defendants "directly or indirectly, singly or in concert, use proprietary trading or covered fund, 'junk bonds', nonpublic proprietary reports,

unauthorized broker-dealers, non-contractual compliance reviewers, underlying portfolio managers, and unregistered exchanges to conduct in-house asset transfers between Plaintiffs' VA contract and Prudential, which is prohibited." Am. Compl. ¶ 92. However, there is absolutely no mention of the Sub-Adviser Defendants in any of the paragraphs that provide detail on Plaintiffs' incomprehensible Rule 10b-5 allegations. *See id*. ¶¶ 50-53 ("Rule 10b-5: Material Misrepresentation or Omission; *id*. ¶¶ 54-55 ("Rule 10b-5: Scienter"); *id.* ¶ 56 ("Rule 10b-5: Reliance Upon the Misrepresentation or Omission"); *id.* ¶¶ 57-61 ("Rule 10b-5: In Connection with the Purchase or Sale of Securities"); *id.* ¶¶ 62-66 ("Rule 10b-5: Loss Causation"); *id.* ¶ 67 ("Rule 10b-5: Economic Loss"). These allegations – to the extent one can guess at what they mean – are asserted only against Prudential, Pruco, Grier, or more frequently an amalgam of "Defendants." *See id*.

Even if the Sub-Adviser Defendants could make sense of this litany of alleged prohibited conduct, and could ascertain why they were named in Count 7, the amended complaint fails to plead with particularity facts to show that this "proprietary trading" was in any way associated with material misrepresentations, omissions, or deception upon which Plaintiffs relied. *See also* Prudential Defendants' Memorandum of Law § I (Dkt. 22). Accordingly, this claim should likewise be dismissed with prejudice.

**V. PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF SECTION 12(d)(1) OF THE INVESTMENT COMPANY ACT (COUNT 10)**

In Count 10, and as in prior complaints in the First Lawsuit, Plaintiffs assert liability under Section 12(d)(1) of the Investment Company Act. Am. Compl. ¶¶ 100-102. However, this provision of the Investment Company Act restricts a company's ability to acquire a large ownership stake in another company. This section specifically provides as follows:

8

(A) It shall be unlawful for any registered investment company (the "acquiring company") and any company or companies controlled by such acquiring company to purchase or otherwise acquire any security issued by any other investment company (the "acquired company"), and for any investment company (the "acquiring company") and any company or companies controlled by such acquiring company to purchase or otherwise acquire any security issued by any registered investment company (the "acquired company"), if the acquiring company and any company or companies controlled by it immediately after such purchase or acquisition own in the aggregate—

    (i) more than 3 per centum of the total outstanding voting stock of the acquired company;

    (ii) securities issued by the acquired company having an aggregate value in excess of 5 per centum of the value of the total assets of the acquiring company; or

    (iii) securities issued by the acquired company and all other investment companies (other than treasury stock of the acquiring company) having an aggregate value in excess of 10 per centum of the value of the total assets of the acquiring company.

(B) It shall be unlawful for any registered open-end investment company (the "acquired company"), any principal underwriter therefor, or any broker or dealer registered under the Securities Exchange Act of 1934 [15 U.S.C.A. § 78a et seq.], knowingly to sell or otherwise dispose of any security issued by the acquired company to any other investment company (the "acquiring company") or any company or companies controlled by the acquiring company, if immediately after such sale or disposition--

    (i) more than 3 per centum of the total outstanding voting stock of the acquired company is owned by the acquiring company and any company or companies controlled by it; or

    (ii) more than 10 per centum of the total outstanding voting stock of the acquired company is owned by the acquiring company and other investment companies and companies controlled by them. [15 U.S.C. § 80a-12(d)(1)].

The amended complaint contains no allegations that any transaction occurred that would implicate or support a claim under Section 12(d)(1) of the Investment Company Act. Accordingly, Count 10 should be dismissed with prejudice.

## VI. THE COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW A PETITION FOR RECOVERABLE COSTS UNDER RULE 41(D)

Finally, the Court should exercise its discretion under Fed. R. Civ. P. 41(d) and allow the Sub-Adviser Defendants to submit a petition for payment of costs incurred in defense of Plaintiffs' First Lawsuit, which is substantively identical to the claims brought herein. Given the apparent misrepresentation Plaintiffs made to the Court which allowed these farcical claims to be refiled, there is just cause for the Court to exercise discretion to allow a petition under Rule 41(d) in this matter.

Pursuant to Federal Rule of Civil Procedure 41(d)(1), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court . . . may order the plaintiff to pay all or part of the costs of that previous action. . . ." Further, this Court has the "inherent power to punish the full range of litigation abuses," which includes punishing a party for acts that "inflict[ ] needless costs on the court and the defendants." *Mañez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008); *see Esposito v. Piatrowski*, 223 F.3d 497, 500 (7th Cir. 2000) (recognizing that Rule 41(d) "allows courts and defendants to avoid the costs of groundless litigation.")

Furthermore, attorney's fees are a recoverable cost of litigation under Rule 41(d) where the substantive statute that formed the basis of the original suit allows for the recovery of such fees as costs *or* if such fees are specifically ordered by the court. *See Esposito*, 223 F.3d at 501. Here, Plaintiffs in Count 1 of their amended complaint in the First Lawsuit asserted claims under Section 5 of the Securities Act, 15 U.S.C. § 77(e). (Dkt. 11, Ex. E. ¶¶ 68-70 ). Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77(l)(a)(1), provides a private cause of action for violation of Section 5, and Section 11(e) of the Securities Act, in turn, provides for recovery of attorney's fees:

10

> In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

15 U.S.C. § 77k(e). *See also W. Fed. Corp. v. Erickson*, 739 F.2d 1439, 1444 (9th Cir. 1984) (affirming award of attorney's fees to plaintiffs under Section 11(e) of the Securities Act for a violation of Section 5 of the Securities Act); *Colon v. Diaz-Gonzalez*, No. CIV. 04-2371 (SEC), 2009 WL 454030, at *7 (D.P.R. Feb. 19, 2009) (awarding attorney's fees under Section 12 of the Securities Act to plaintiffs), *order amended on denial of reconsideration*, No. CIV. 04-2371 (SEC), 2009 WL 3571974 (D.P.R. Oct. 26, 2009); *Guthrie v. Downs*, Fed. Sec. L. Rep. (CCH) ¶ 96896, Nos. 88-CV-75066-DT, 89-CV-71525-DT, 1991 WL 354939, at *6 (E.D. Mich. Aug. 7, 1991) (awarding attorney's fees and costs under Section 12 of the Securities Act to plaintiff), *aff'd*, 972 F.2d 350 (6th Cir. 1992); *Zissu v. Bear, Stearns & Co.*, 627 F. Supp. 687, 694-95 (S.D.N.Y. 1986) (awarding attorney's fees and costs under Section 12 of the Securities Act to defendants).

The district court's decision in *New Louisiana Holdings, LLC v. Arrowsmith*, No. 11 C 5031, 2012 WL 6061710 (N.D. Ill. Dec. 4, 2012), is also instructive. In that case, the court recognized that the similar prior lawsuit, filed in a different district, resulted in unnecessary costs borne by the defendants. *Id.* at *10. After granting the defendants' motion to dismiss, the court also entertained a petition for costs and awarded attorney's fees as part of its inherent authority, even though the underlying federal statute relied upon by the plaintiff did not allow for recovery of fees. *Id.*

11

In Plaintiffs' First Lawsuit, a dismissal with prejudice had been entered and the case terminated. Only because of Plaintiffs' pleas to the Court about a forthcoming FINRA arbitration claim did the Court reconsider and entertain Plaintiffs' motion to amend the prior dismissal to one without prejudice. But for the Court's order requested by Plaintiffs – which was based on an apparent misrepresentation by Plaintiffs, as they did not actually file a FINRA claim – this current lawsuit could not have been filed. Given the procedural history of these lawsuits, Plaintiffs' request in the First Lawsuit to amend the judgment must be construed as an attempt to avoid an unfavorable ruling, as opposed to a path to articulate their grievances in a regulatory forum. Such motivations seeking "tactical advantage" are "precisely what Rule 41(d) seeks to deter." *Espenscheid v. DirectSat USA, LLC*, 708 F. Supp. 2d 781, 796 (W.D. Wis. 2010). Accordingly, the Court should grant the Sub-Adviser Defendants' request to file a petition for recoverable costs under Rule 41(d).

## CONCLUSION

For the foregoing reasons, the claims in the amended complaint against the Sub-Adviser Defendants should be dismissed with prejudice, and the Sub-Adviser Defendants should be permitted to file a petition for recoverable costs under Rule 41(d).

Dated: May 1, 2015

Respectfully submitted,

LSV ASSET MANAGEMENT
MARSICO CAPITAL MANAGEMENT, LLC
WILLIAM BLAIR & CO., LLC

By: /s/ Norman K. Beck
    One of Their Attorneys

Norman K. Beck
Cristina Covarrubias
WINSTON & STRAWN LLP
35 West Wacker Drive

        Chicago, Illinois 60601
        Telephone:    (312) 558-5600
        Facsimile:     (312) 558-5700
        Email: nbeck@winston.com
        Email: ccovarrubias@winston.com

*Counsel for Defendants LSV ASSET MANAGEMENT, MARSICO CAPITAL MANAGEMENT, LLC and WILLIAM BLAIR & CO., LLC*

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on all counsel and parties of record via the Court's ECF system on May 1, 2015.

/s/ Cristina Covarrubias